UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE GODDARD, | No. 2:18-cv-02659-TLN-CKD |
| Plaintiff, | |
| v. | **ORDER** |
| EL DORADO COUNTY, | |
| Defendant. | |

This matter is before the Court on Defendant El Dorado County's ("Defendant" or "County") Motion for Summary Judgment.  (ECF No. 37.)  Plaintiff Catherine Goddard ("Plaintiff") filed an opposition.  (ECF No. 51.)  Defendant filed a reply.  (ECF No. 54.)  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendant's motion.

///
///
///
///
///
///
///
///

1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

2    Plaintiff was hired as Executive Secretary to the El Dorado County Chief Public

3 Defender, Teri Monterosso ("Monterosso"), on March 21, 2017.  (ECF No. 52 at 2.)  Plaintiff was

4 57 years old at the time of hire.  (*Id.*)  Plaintiff's job duties included assistance with departmental

5 human resource functions, invoice processing, first-level review of employee timesheets, facilities

6 administration, organization and documentation of office meetings, management of filing

7 systems, and directing and overseeing the work of the clerical employees.  (*Id.*)  Under County

8 policy, Plaintiff was required to serve a one-year probationary period in her position before she

9 would acquire civil service, job-protected status.  (*Id.* at 3.)  As a probationary employee,

10 Plaintiff's employment was at-will, meaning she could be released at any time for any reason that

11 was not unlawful.  (*Id.*)  Under County policy, Plaintiff was not entitled to any forewarning or

12 process before being released on probation, nor was she entitled to any statement of reasons.  (*Id.*)

13 Monterosso terminated Plaintiff on November 30, 2017, approximately 8 months after her hire

14 date.  (*Id.* at 4.)

15    Plaintiff filed the operative First Amended Complaint ("FAC") on November 22, 2018,

16 alleging the following claims: (1) age discrimination under the Age Discrimination in

17 Employment Act ("ADEA"), 29 U.S.C. § 621; (2) age discrimination under the California Fair

18 Employment and Housing Act ("FEHA"), California Government Code § 12940(a); (3) a *Monell*

19 claim under 42 U.S.C. § 1983 ("§ 1983"); (4) retaliation under FEHA, California Government

20 Code § 12940(h); and (5) failure to prevent discrimination and retaliation under FEHA, California

21 Government Code § 12940(k).  (*Id.*)  Defendant filed the instant motion for summary judgment

22 on May 14, 2020.  (ECF No. 37.)

23    **II.    STANDARD OF LAW**

24    Summary judgment is appropriate when the moving party demonstrates no genuine issue

25 of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

---

[1]    The following recitation of facts is undisputed unless otherwise noted.  The disputed facts will be addressed in more detail in relation to the parties' arguments.  The Court will only address objections to evidence upon which the Court relies in its ruling.

R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id*. at 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.*

**III.   ANALYSIS**

Defendant moves for summary judgment as to all of Plaintiff's claims.  (ECF No. 37-1.) The Court will address each claim in turn.

            A.      <u>Age Discrimination under ADEA (Claim One) and FEHA (Claim Two)</u>

The ADEA makes it unlawful for an employer to take adverse action against an employee "because of such individual's age."  29 U.S.C. § 623(a).  FEHA contains a similar provision.  Cal. Gov't Code § 12940(a).  An ADEA and FEHA plaintiff alleging age discrimination may proceed on a disparate treatment or disparate impact theory.  *Palmer v. United States*, 794 F.2d 534, 536–37 (9th Cir. 1986).  As Plaintiff argues intentional discrimination, she proceeds on a disparate treatment theory.  (ECF No. 51 at 13–14.)

Unless a plaintiff presents direct evidence of a discriminatory motive, a court will generally apply the *McDonnell Douglas* burden-shifting analysis in an age discrimination case. *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015). "Under the *McDonnell Douglas* framework, a plaintiff must carry the initial burden to establish a prima facie case that creates an inference of discrimination."  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "If the employee establishes a prima facie case, an

4

inference of discrimination arises and the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its employment action." *Id.* "If the employer does so, the burden shifts back to the employee to prove that the employer's explanation is a pretext for discrimination." *Id.* Because Plaintiff does not argue there is direct evidence of discriminatory motive, the Court will address her claim under the *McDonnell Douglas* framework.

### i.    Prima Facie Case

To establish a prima facie case of age discrimination under the disparate treatment theory, Plaintiff must show she: (1) was a member of a protected class; (2) was performing her job in a satisfactory manner; (3) experienced an adverse employment action; (4) was replaced by a substantially younger employee with equal or inferior qualifications. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1209 (9th Cir. 2008). The fourth element can also be expressed as "some other circumstance suggesting a discriminatory motive." *Krylova v. Genentech Inc.*, 37 F. Supp. 3d 1156, 1163 (N.D. Cal. 2014).

In its motion, Defendant only disputes the fourth element,[2] arguing Plaintiff was not replaced by someone substantially younger with equal or inferior qualifications and there is no other circumstance suggesting a discriminatory motive. (ECF No. 37-1 at 11.) In opposition, Plaintiff argues there is sufficient circumstantial evidence of age discrimination to defeat a motion for summary judgment. (ECF No. 51 at 15.)

The Court agrees with Defendant that Plaintiff has not shown she was replaced with someone substantially younger with equal or inferior qualifications. The Ninth Circuit has held that "an average age difference of ten years or more between the plaintiff and the replacement[] will be presumptively substantial, whereas an age difference of less than ten years will be presumptively insubstantial." *France*, 795 F.3d at 1174. Plaintiff was born in May 1959 and was 57 years old when she was hired. (ECF No. 52 at 2.) Plaintiff's replacement, Brenda Bailey

---

[2]    In its reply, Defendant argues "Plaintiff has not established she was satisfactorily performing her duties." (ECF No. 54 at 4.) To the extent Defendant is arguing that Plaintiff has not met the second element of her prima facie case, the Court declines to address an argument raised for the first time in reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

("Bailey"), was born in October 1968.  (*Id.* at 6.)  The age difference between Plaintiff and Bailey is less than 10 years, which is presumptively insubstantial.  *France*, 795 F.3d at 1174; *Diaz*, 521 F.3d at 1209 (concluding that a 9.5-year average age difference between workers hired and those laid off was insufficient to establish a prima facie case of age discrimination).  Moreover, Plaintiff does not present evidence that Bailey had equal or inferior qualifications compared to Plaintiff.  (ECF No. 52 at 7.)  In contrast, Defendant presents undisputed evidence that Bailey had an associate degree and 20 years of County experience supporting County Supervisors and working in a legal environment (probation), while Plaintiff had no County work experience, no public sector experience, no legal office experience, and no advanced degree.  (*Id.*)

The question of whether Plaintiff has shown "some other circumstance suggesting a discriminatory motive" is a close one.  It is undisputed that Monterosso never made any derogatory comments about Plaintiff's age or referenced Plaintiff's age in any way, and Plaintiff never heard Monterosso comment about anyone's age or the abilities of older workers.  (ECF No. 52 at 7.)  In her deposition testimony, Plaintiff stated the only fact that caused her to believe she was subjected to age discrimination was her belief that she is "older, smarter, and wiser" than Monterosso.  (ECF No. 37-8 at 24–26.)  In opposition to the instant motion, Plaintiff adds that her position "sat vacant for over a year" and was "absorbed by younger clerical employees" during that time.  (ECF No. 51 at 15.)  In Plaintiff's declaration, she vaguely refers to a "group of older clerical employees" and a 26-year-old clerical employee but provides no evidence as to how Plaintiff's work was allocated among that group.  (ECF No. 53 at 6, 9.)  The mere presence of one "younger" employee within a group of "older" employees that took on Plaintiff's work after her release does not support an inference that Defendant discriminated against Plaintiff based on her age.  Plaintiff further argues the fact that Defendant did not hire Bailey until after Plaintiff brought the instant action suggests Defendant was "attempt[ing] to provide cover for an allegation of ageism."  (*Id.*)  This evidence is insufficient to provide an inference of age discrimination.

However, in a later section of her opposition, Plaintiff argues that Monterosso consulted with Human Resource Director Tameka Usher ("Usher") to decide to terminate Plaintiff's employment.  (ECF No. 51 at 18.)  Plaintiff also argues that Usher harbored "significant

6

discriminatory animus towards older employees" based on comments Usher made to Human Resource ("HR") liaison Christine Hendricks ("Hendricks"). (*Id.*) For example, Hendricks stated in her declaration that Usher "made repeated comments, and made it known to the HR staff that 'older employees' are not as 'good' with 'change' as the younger employees." (ECF No. 53 at 19–20.) Plaintiff argues this is evidence that a decisionmaker acted with discriminatory motive. (*Id.*) Defendant does not address this argument in its reply.[3]

"[A]n employer is liable for the discriminatory acts of a subordinate in cases where the biased subordinate is, as a practical matter, the actual decisionmaker." *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007). Similarly, a subordinate's bias is imputed to the employer "if the subordinate influenced, affected, or was involved in the adverse employment decision." *Id.* at 1183; *see also France*, 795 F.3d at 1176 ("[E]ven if a subordinate employee with bias was not the final decisionmaker, the plaintiff can establish a causal link by proving that the biased subordinate influenced or was involved in the decision or decision-making process."). In the absence of any argument to the contrary and keeping in mind that the Plaintiff's burden at this stage is "minimal," the Court concludes Plaintiff's evidence that Usher may have held bias and may have influenced Monterosso's decision is sufficient to create an inference of age discrimination as required for the fourth element of her prima facie case. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) ("The requisite degree of proof necessary to establish a prima facie case for . . . ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.").

### ii.   Legitimate, Nondiscriminatory Reasons

If Plaintiff establishes a prima facie case, the "burden of production, but not persuasion, . . . [shifts] to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. U.C. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000).

---

[3]   Defendant objects to Hendricks's statements about Usher as speculative, irrelevant, and lacking foundation. (ECF No. 54-1 at 38–40.) "[O]bjections to evidence on the ground that it is irrelevant [or] speculative . . . are all duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Defendant also fails to persuade the Court that the statements lack foundation. Accordingly, the Court OVERRULES Defendant's boilerplate objections.

1    "To accomplish this, the defendant must clearly set forth, through the introduction of admissible

2    evidence, the reasons for" the challenged adverse employments actions. *Lyons v. England*, 307

3    F.3d 1092, 1112 (9th Cir. 2002).  Whether a defendant has met its burden of production involves

4    "no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  "In other

5    words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant

6    does not require that the court make a credibility determination on the defendant's evidence at the

7    summary judgment stage, even if it has reason to disbelieve that evidence." *Bodett v. CoxCom,*

8    *Inc.*, 366 F.3d 736, 742 (9th Cir. 2004).

9        In the instant case, Defendant has provided evidence that Monterosso felt Plaintiff — an

10   at-will employee — lacked sufficient job knowledge (particularly around wage-and-hour

11   requirements), made frequent errors in paperwork and procedure, and had an argumentative

12   attitude.  (ECF No. 37-1 at 13; ECF No. 37-3.)  This is sufficient to meet Defendant's burden of

13   production.

14                                    *iii.    Pretext*

15       If Defendant articulates legitimate, nondiscriminatory reasons for its decision, as it did

16   here, the burden shifts to Plaintiff to raise a genuine dispute of material fact as to pretext to avoid

17   summary judgment.  *France*, 795 F.3d at 1175.  "A plaintiff asserting age discrimination can

18   'demonstrate pretext in either of two ways: (1) directly, by showing that unlawful discrimination

19   more likely than not motivated the employer; or (2) indirectly, by showing that the employer's

20   proffered explanation is unworthy of credence because it is internally inconsistent or otherwise

21   not believable.'"  *Id.* (citation omitted).

22       Plaintiff argues Defendant's "proffered reasons for termination are false, inconsistent, and

23   not worthy of any credence."  (ECF No. 51 at 17.)  Plaintiff states that when she "was initially

24   fired, she was given no reasons for her termination" and it was not until she filed this action that

25   Defendant claimed the reasons for Plaintiff's termination were poor performance, lack of job

26   knowledge, and having a bad attitude.  (*Id.*)  Plaintiff argues these reasons are false because

27   Monterosso gave Plaintiff consistent and glowing praise during the first six months of her

28   probation and gave Plaintiff a performance step pay increase in July 2017.  (*Id.* (citing ECF No.

1   53 at 5).)  In reply, Defendant argues Plaintiff's evidence is irrelevant to the determination of

2   whether her performance was satisfactory at the time of her termination.  (ECF No. 54 at 6.)

3           Plaintiff's evidence is sufficient to create a triable issue of material fact as to pretext.  A

4   reasonable juror could conclude that Defendant's "proffered explanation is unworthy of

5   credence" based on Plaintiff's evidence that she was doing well at her job during the first six

6   months of probation.  *France*, 795 F.3d at 1175.  Further, as discussed, there are also triable

7   issues as to whether Usher held discriminatory animus toward older workers and whether she

8   influenced Monterosso's decision to terminate Plaintiff on that basis.

9           Accordingly, the Court DENIES Defendant's motion for summary judgment as to

10  Plaintiff's age discrimination claims.

11                  B.      Section 1983 Claim (Claim Three)

12          As to her § 1983 claim, Plaintiff argues Defendant has a custom, practice, and policy of

13  retaliating against employees that make complaints against the Chief Public Defender or the

14  department, in violation of the First Amendment.[4]  (ECF No. 51 at 22.)  In moving for summary

15  judgment, Defendant argues there is no underlying constitutional violation because Plaintiff's

16  complaint to human resource staff about her personal job dissatisfaction is not "speech on a

17  matter of public concern" that would otherwise be protected by the First Amendment and there is

18  no evidence she was terminated because of her speech.  (ECF No. 37-1 at 15.)  Defendant also

19  argues that even if Plaintiff had shown an underlying constitutional deprivation, there is no

20  evidence the harm was caused pursuant to Defendant's custom or policy.  (*Id.* at 16.)

21          Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or

22  immunities secured by the Constitution and laws' of the United States."  *Long v. Cnty. of Los

23  Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  The two essential elements a plaintiff must

24  establish for a § 1983 claim are as follows: "(1) that a right secured by the Constitution or laws of

25  _____

26  [4]      Defendant also argues Plaintiff cannot bring a § 1983 claim based on an Equal Protection
    violation.  (ECF No. 37-1 at 15.)  Plaintiff does not respond to this argument or even mention the
27  Equal Protection clause in her opposition.  (*See* ECF No. 51.)  Rather, Plaintiff appears to proceed
    solely on a First Amendment claim.  (*Id.* at 22.)  Therefore, the Court need not and does not
28  address the Equal Protection clause herein.

1  the United States was violated[;] and (2) that the alleged violation was committed by a person

2  acting under the color of State law."  *Id.*  A person deprives another "of a constitutional right,

3  within the meaning of [§] 1983, if he does an affirmative act, participates in another's affirmative

4  acts, or omits to perform an act which he is legally required to do that causes the deprivation of

5  which [the plaintiff complains]."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

6        The Court agrees with Defendant that there is no evidence of a constitutional violation.

7  "The First Amendment's guarantee of freedom of speech protects government employees from

8  termination *because of* their speech on matters of public concern."  *Bd. of Cnty. Comm'rs v.*

9  *Umbehr*, 518 U.S. 668, 675 (1996) (emphasis in original).  The inquiry into whether a plaintiff

10  spoke on a matter of public concern is purely a question of law.  *Robinson v. York*, 566 F.3d 817,

11  822 (9th Cir. 2009).  A matter of public concern relates "to any matter of political, social, or other

12  concern to the community."  *Connick v. Myers*, 461 U.S. 138, 146 (1983).  In contrast, speech

13  concerning "individual disputes and grievances and that would be of no relevance to the public's

14  evaluation of the performance of government agencies, is generally not of public concern."

15  *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 924 (9th Cir. 2004) (citation omitted).

16  Whether an employee's expression may be characterized as a matter of public concern "must be

17  determined by the content, form and context of a given statement, as revealed by the whole

18  record."  *Connick*, 461 U.S. at 146–47.

19        In the instant case, Plaintiff's made two HR complaints: (1) in September 2017, Plaintiff

20  states she told Hendricks that Plaintiff and several other employees were experiencing unequal

21  treatment, harassment, and a hostile work environment; and (2) in late-November 2017, Plaintiff

22  states she contacted HR analyst Mike Strella ("Strella") to make a complaint of unequal

23  treatment, retaliation, harassment, and a hostile work environment.  (ECF No. 51 at 10–11.)  First,

24  the content of the speech at issue appears to deal with "personnel disputes and grievances" that

25  generally would *not* be a matter of public concern.  *Desrochers v. City of San Bernardino*, 572

26  F.3d 703, 710 (9th Cir. 2009) ("[W]hen working for the government, saying one's boss is a bully

27  does not necessarily a constitutional case make.").  Second, the form of the speech — two private

28  meetings with HR staff — weighs against finding the speech addressed a matter of public

10

1   concern.  *Id.* at 715 ("Because the speech at issue took the form of internal employee grievances

2   which were not disseminated to the public, this . . . cuts against a finding of public concern.").

3   Third, the context of Plaintiff's speech suggests that she was reporting dissatisfaction with her

4   employment situation to further "some purely private interest" rather than "to bring to light actual

5   or protentional wrongdoing or breach of public trust."  *Id.* at 715.  These conclusions weigh

6   against finding the speech was a matter of public concern.  As such, Plaintiff has not shown her

7   First Amendment rights were violated.

8           In addition, there is insufficient evidence that Plaintiff's termination was the result of

9   Defendant's policy or custom as required for municipal liability.  It is well-established that

10  municipalities cannot be held liable under § 1983 for unconstitutional torts of their employees

11  based solely on respondeat superior.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658,

12  693–94 (1978).  Pursuant to *Monell*, a municipality is only liable under § 1983 when its own

13  illegal acts are a "moving force" in the constitutional violation.  *Id.*  A plaintiff may establish

14  municipal liability by demonstrating that (1) the constitutional tort was the result of a

15  "longstanding practice or custom which constitutes the standard operating procedure of the local

16  government entity;" (2) the tortfeasor was an official whose acts fairly represent official policy

17  such that the challenged action constituted official policy; or (3) an official with final policy-

18  making authority "delegated that authority to, or ratified the decision of, a subordinate."  *Price v.*

19  *Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (quoting *Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968,

20  984-85 (9th Cir. 2002)).

21          Plaintiff argues Defendant has a "custom, pattern, practice, and policy of retaliating

22  against employees that make complaints of public concern against the Chief or the department"

23  because "the evidence shows that the older employees were targeted in the workplace, when they

24  would make complaints pertaining to overtime, wage and hour violations, meal and rest breaks,

25  and unequal treatment between the older employees and the younger clerical staff, including Ms.

26  Kent, who is approximately 26 years old."  (ECF No. 51 at 22–23.)  Plaintiff seems to base this

27  assertion entirely on a discussion she had with "older clerical employees" who told Plaintiff they

28  were "seriously stressed out and felt targeted."  (ECF No. 53 at 5–6.)  However, Plaintiff does not

1     cite — nor can the Court locate — evidence to suggest that Defendant had a longstanding policy

2     or custom of retaliating against employees who made HR complaints about matters of public

3     concern, or that such a policy or custom caused Plaintiff's harm.

4          Therefore, the Court GRANTS Defendant's motion for summary judgment as to

5     Plaintiff's § 1983 claim.

6              C.     Retaliation under FEHA (Claim Four)

7          Retaliation claims under FEHA are assessed using the *McDonnell Douglas* burden-

8     shifting framework. *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th 216, 244 (2016). To

9     establish a prima facie case of retaliation, Plaintiff must point to sufficient evidence to permit a

10    reasonable factfinder to conclude that: (1) she engaged in a protected activity; (2) she suffered an

11    adverse employment action; and (3) there was a causal link between her activity and the

12    employment decision. *Id.* Once Plaintiff establishes her prima facie case, the burden of

13    production shifts to Defendant to present a legitimate, non-retaliatory reason for the adverse

14    employment action. *Loggins v. Kaiser Permanente Internat.*, 151 Cal. App. 4th 1102, 1112

15    (2007). If Defendant carries this burden, Plaintiff must demonstrate a genuine issue of material

16    fact as to whether the reason advanced by the employer is pretext for retaliation. *Id.*; *Brooks v.*

17    *City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).

18               *i.     Prima Facie Case*

19         Defendant argues Plaintiff's prima facie case fails because she did not engage in a

20    protected activity and there is no evidence of causation. (ECF No. 37-1 at 17–18.) The Court

21    will address both disputed elements in turn.

22               *a.     Protected Activity*

23         Defendant argues Plaintiff did not engage in a protected activity because she did not

24    complain of age discrimination during her employment. (ECF No. 37-1 at 18.) In opposition,

25    Plaintiff argues her HR complaints were sufficient to put her employer on notice that she was

26    complaining about age discrimination. (ECF No. 51 at 20.)

27         In a FEHA retaliation claim, "protected activity" includes an employee's formal or

28    informal complaint to a supervisor regarding unlawful discrimination. *Passantino v. Johnson &*

1   *Johnson Consumer Prod., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000) (citing *Moyo v. Gomez*, 40 F.3d

2   982 (9th Cir. 1994)).  However, "complaints about personal grievances or vague or conclusory

3   remarks that fail to put an employer on notice as to what conduct it should investigate will not

4   suffice to establish protected conduct."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1047

5   (2005).  "The relevant question . . . is not whether a formal accusation of discrimination is made

6   but whether the employee's communications to the employer sufficiently convey the employee's

7   reasonable concerns that the employer has acted or is acting in an unlawful discriminatory

8   manner."  *Id.* (citation omitted).

9           The Court concludes Plaintiff has presented sufficient evidence to create a triable issue of

10   fact as to whether she engaged in a protected activity.  Plaintiff submits a declaration asserting

11   that during her September 2017 complaint to Hendricks, she described facts that demonstrated

12   unequal treatment towards older employees.  (ECF No. 53 at 6.)  She further asserts that she

13   advised Hendricks that Monterosso was targeting older workers.  (*Id.*)  Plaintiff states she

14   discussed the same issue with Strella during her November 2017 complaint.[5]  (*Id.* at 8.)  Plaintiff

15   was not required to use the actual term "age discrimination" in her HR complaints.  *Yanowitz*, 36

16   Cal. 4th at 1047 ("[A]n employee is not required to use legal terms or buzzwords when opposing

17   discrimination.  The court will find opposing activity if the employee's comments, when read in

18   their totality, oppose discrimination.").  Based on the record before the Court, a reasonable juror

19   could find that Plaintiff sufficiently conveyed her reasonable concerns that Defendant was

20   engaged in age discrimination.

21   _____

22   [5]        Defendant objects to this testimony as "sham testimony" because it contradicts Plaintiff's
     deposition testimony about her complaints to Hendricks and Strella.  (*See* ECF No. 54-1 at 8, 23
23   (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1999)).)  Defendant argues
     Plaintiff stated in her deposition that she did not complain to Hendricks or Strella about age
24   discrimination.  (*Id.*)  However, there is insufficient evidence to determine that Plaintiff's
     subsequent declaration is a "sham," especially given the fact that Plaintiff was not required to
25   express her claim perfectly.  *Yanowitz*, 36 Cal. 4th at 1047 ("Employees often do not speak with
     the clarity or precision of lawyers.") (citation omitted).  The Court believes the trier of fact should
26   make credibility determinations and weigh conflicting evidence under these circumstances.  *See*
     *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993)
27   (stating that the sham testimony rule "should be applied with caution").  Thus, the Court
     OVERRULES Defendant's objection.
28

1                                          *b.      Causation*

2              Defendant next argues there is no causal link between Plaintiff's HR complaints and her

3     termination because there is no evidence Monterosso knew of the complaints and Monterosso was

4     already contemplating a probationary release in October 2017.  (ECF No. 37-1 at 18–19.)

5              A plaintiff may establish a causal link between the alleged protected activity and the

6     alleged adverse action by circumstantial evidence, including the employer's knowledge of the

7     protected activity and the proximity in time between the protected action and the adverse

8     employment act.  *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988) (citation omitted).

9              The Court concludes Plaintiff presented sufficient evidence to create a triable issue of fact

10    as to causation.  It is undisputed that Monterosso released Plaintiff from probation two months

11    after her first HR complaint and days after her second HR complaint.  (ECF No. 52 at 4.)  This

12    temporal proximity is sufficient to create a reasonable inference that Plaintiff's termination was

13    related to her HR complaints.  *Passantino*, 212 F.3d at 507 ("[W]hen adverse decisions are taken

14    within a reasonable period of time after complaints of discrimination have been made, retaliatory

15    intent may be inferred.").  Moreover, Plaintiff presents evidence that Monterosso's behavior

16    toward Plaintiff changed for the worse after Plaintiff made her first HR complaint, which

17    provides a reasonable inference that Monterosso knew of the complaint.  (ECF No. 53 at 7–8.)

18                          *ii.      Legitimate, Nondiscriminatory Reasons and Pretext*

19             As discussed in the context of Plaintiff's discrimination claims, Defendant has provided

20    evidence that Monterosso felt Plaintiff lacked sufficient job knowledge, made frequent errors in

21    paperwork and procedure, and had an argumentative attitude.  (ECF No. 37-3.)  This is sufficient

22    to meet Defendant's burden of production for Plaintiff's retaliation claim.  Similarly, as already

23    discussed, Plaintiff has provided sufficient evidence that Defendant's "proffered explanation is

24    unworthy of credence" based on Plaintiff's evidence that she was doing well at her job during the

25    first six months of probation and Monterosso's attitude toward Plaintiff changed after she made

26    the initial HR complaint.  *France*, 795 F.3d at 1175.

27             Accordingly, the Court DENIES Defendant's motion for summary judgment as to

28    Plaintiff's retaliation claim.

                                                    14

D.    Failure to Prevent Discrimination or Retaliation under FEHA (Claim Five)

A plaintiff seeking to recover damages based on a claim of failure to prevent discrimination or retaliation must show three essential elements: (1) she was subjected to discrimination or retaliation; (2) the defendant failed to take all reasonable steps to prevent discrimination or retaliation; and (3) the defendant's failure caused the plaintiff to suffer injury, damage, loss, or harm.  *Hatfield v. DaVita Healthcare Partners, Inc.*, No. C 13–5206 SBA, 2014 WL 2111237, at \*5–6 (N.D. Cal. May 20, 2014).

Defendant argues Claim Five fails because it is derivative of Plaintiff's discrimination and retaliation claims and those claims fail as a matter of law.[6]  (ECF No. 37-1 at 20.)  Because the Court has found that Plaintiff's discrimination and retaliation claims survive summary judgment, the Court DENIES Defendant's motion for summary judgment as to Claim Five.

**IV.    CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part Defendant's Motion for Summary Judgment (ECF No. 37) as follows:

1.    The Court DENIES summary judgment as to Claims One and Two;

2.    The Court GRANTS summary judgment as to Claim Three;

3.    The Court DENIES summary judgment as to Claim Four; and

4.    The Court DENIES summary judgment as to Claim Five.

The parties are ORDERED to file a Joint Status Report not later than thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

**DATE:  June 15, 2022**

Troy L. Nunley
United States District Judge

---

[6]    In reply, Defendant adds that it "did take all reasonable steps to prevent discrimination and retaliation."  (ECF No. 54 at 11.)  Defendant's argument is improperly raised for the first time in reply, and the Court will not consider it.  *See Zamani*, 491 F.3d at 997.

15